UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SAMANTHA PACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:24-CV-355-KAC-DCP |
| | ) | |
| UNITED CLEANUP OAK RIDGE, LLC; | ) | |
| and RSI ENTECH, LLC; | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This action is before the Court on the "Motion to Dismiss" [Doc. 9] filed by Defendant

United Cleanup Oak Ridge, LLC ("UCOR"). For the reasons below, the Court grants Defendant

UCOR's Motion in part and denies the Motion in part.

## I. **Background**[1]

In 2016, Defendant RSI Entech, LLC ("RSI") hired Plaintiff Samantha Pack [Doc. 1 ¶ 29].

At all relevant times, RSI was a subcontractor for Defendant UCOR [*See id*. ¶ 23]. For

approximately four (4) years, Plaintiff worked for RSI on UCOR projects as a "Environmental

Services Manager" [*See* Docs. 9-2 at 45-46 (describing Plaintiff's "identical" experience with

UCOR over the "past 4 years")]. In January 2021, she was working "full time" at RSI as an

"Environmental Services Manager" on a UCOR project [Doc. 1 ¶ 64].

On January 7, 2021, UCOR's President Ken Rueter asked Plaintiff to serve as one of

UCOR's "Key Personnel" on a bid for a new Cleanup Contract with the Department of Energy

---

[1] Because Plaintiff is the nonmoving Party, the Court construes the Complaint in the light most favorable to her, accepts the well-pleaded factual allegations as true, and draws all reasonable inferences in her favor. *See Royal Truck & Trailer Sales and Serv. Inc. v. Kraft*¸ 974 F.3d 756, 758 (6th Cir. 2020) (quotation omitted).

(the "Cleanup Contract") [*See id.* ¶¶ 52, 53]. "Rueter informed Plaintiff that if she agreed to be listed as one of the Key Personnel, she had to commit full time to work on the Cleanup Contract for a minimum of three (3) years" [*Id.* ¶ 58]. She would serve as the "Regulatory and Environmental Services Manager" [*Id.* ¶ 62]. Her work would be conducted through a subcontract between Defendants UCOR and RSI, and RSI would pay her [*Id.* ¶¶ 62, 67]. But "she would report to employees at UCOR" [*See id.* ¶ 67]. Plaintiff discussed UCOR's offer with her supervisor at RSI [*Id.* ¶ 65]. And her RSI supervisor "authorized Plaintiff to accept Ken Rueter's offer"[*Id.*]. Plaintiff then told Rueter that she accepted [*See id.* ¶ 68].

Defendant UCOR submitted a Bid for the Cleanup Contract (the "Bid") [*See id.* ¶ 78]. The Bid listed Plaintiff as one of seven (7) key personnel for the Cleanup Contract [*See* Doc. 9-2 at 14]. The other six (6) key personnel were employees of UCOR [*See id.* at 15-49]. Plaintiff was to oversee five (5) aspects of the Cleanup Contract [*See* Doc. 1 ¶ 89]. The Bid listed Plaintiff as an employee of RSI [*See* Doc. 9-2 at 45]. As part of the Bid, Plaintiff signed a certification that included her resume, her duty station, and her commitment to "perform in the proposed position for a minimum of three years" [*See* Doc. 1 ¶ 83; *see also* Doc. 9-2 at 49]. UCOR won the Cleanup Contract on October 16, 2021 [*See id.* ¶ 93].

But after UCOR won the contract, Rueter began changing Plaintiff's "assigned duties," job responsibilities, title, and subordinates [*See id.* ¶¶ 114-15, 124, 136-37]. Over time, those duties, responsibilities, title, and subordinates shifted to a UCOR employee approximately twenty years junior to Plaintiff [*See id.* ¶¶ 114-15, 124, 137, 186]. UCOR employees still supervised Plaintiff's work, and she reported to UCOR employees [*See id.* ¶¶ 46, 48, 196]. But the younger UCOR employee was given Plaintiff's position as one of the "Key Personnel" on the Cleanup Contract

[See id. ¶ 168]. UCOR President Rueter "make the decision to take away Plaintiff's duties and reassign them" [Id. ¶ 143]. And he "made the decision to change Plaintiff's title" [Id. ¶ 144].

On August 31, 2023, RSI's President "informed" Plaintiff that "Defendant, UCOR had released her from working on the Cleanup Contract effective immediately, and that Plaintiff was being terminated by Defendant, RSI effective September 6, 2023" [Id. ¶¶ 175, 176]. RSI's President allegedly explained that Plaintiff was being terminated because she "did not support Ken Rueter's vision" [Id. ¶ 178]. RSI offered Plaintiff a severance agreement and release requiring her to forego any claims against "[a]ll individuals, firms or corporations in any way connected to" RSI [See id. ¶¶ 180, 182-184]. She refused to sign it [Id. ¶ 185].

Thereafter, Plaintiff filed suit against Defendants UCOR and RSI [Id.]. The Complaint alleges that UCOR and RSI both violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-401(a) [See id. ¶ 211]. It also alleges state law claims against Defendant UCOR for breach of contract, promissory estoppel, fraudulent misrepresentation, promissory fraud, fraud by omission, and tortious interference with Plaintiff's employment with RSI [Id. ¶¶ 212, 213, 221-24].

Defendant UCOR moved to dismiss Plaintiff's claims against it under Federal Rule of Civil Procedure 12(b)(6) [Doc. 9]. Because the Complaint references the Bid and it was central to Plaintiff's claims, UCOR attached a copy of the Bid to its Motion [See Docs. 9-1 at 2 n.1, 9-2].

Plaintiff generally opposed the Motion [See generally Docs. 17, 18]. But in her Response, she "withdr[ew] her claim for fraud by omission and does not contest dismissal of that claim" [Doc. 17 at 1].[2] She also argued that the Court cannot consider the Bid without converting

---

[2] To the extent necessary, the Court dismisses the fraud by omission claim with no opposition. See E.D. Tenn. L.R. 7.2.

3

the Motion to one for summary judgment [*See* Doc. 18 at 15]. And she requested leave to amend "if the Court is inclined to grant any portion of UCOR's" Motion [Doc. 18 at 2].[3] But she did not file a separate motion requesting leave to amend or attach a copy of the proposed amended pleading, as is required by this Court's Local Rules. *See* E.D. Tenn. L.R. 15.1. In fact, she did not indicate what changes she would make if granted leave. Defendant replied [Doc. 24]. Sometime later, the action was reassigned to the undersigned [*See* Doc. 32].

## II.     Analysis

As an initial matter, the Court must determine whether Plaintiff is entitled to leave to amend. Under Rule 15, "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But Courts "refrain[] from applying [the] liberal policy of amendment" where a plaintiff makes "only a cursory request for relief and fail[s] to attach a copy of a proposed amended complaint." *Mitchell v. City of Benton Harbor, Mich.*, 137 F.4th 420, 442 (6th Cir. 2025) (citations omitted). Local Rule 15.1 too specifically requires a Party to file a motion for leave to amend and "attach a copy of the proposed amended pleading to the motion." *See* E.D. Tenn. L.R. 15.1. "[F]ailure to comply with this rule may be grounds for denial of the motion." *Id.* As the United States Court of Appeals for the Sixth Circuit has recognized, "a district court may deny leave to amend when the plaintiff 'neither moved formally to amend nor proffered a proposed amended complaint.'" *Forrester v. Am. Sec. & Pro. Serv. LLC*, No. 21-5870, 2022 WL 1514905, at *4 (6th Cir. May 13, 2022) (quoting *United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 197 (6th Cir. 2021)). Here, Plaintiff's failure to comply with Local Rule 15.1 or even attempt to

---

[3] More than twenty-one (21) days had passed since Defendant filed the Motion [*See* Docs. 9, 17]. *See* Fed. R. Civ. P. 15(a)(1)(B).

describe in any way her specific proposed changes dooms her request for leave.  *See* E.D. Tenn. L.R. 15.1; *see also Forrester*, 2022 WL 1514905, at *4.  So, the Court denies the request.

In evaluating a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to" Plaintiff, accepts the well-pleaded factual "allegations as true, and draw[s] all reasonable inferences" in Plaintiff's favor. *See Royal Truck¸* 974 F.3d at 758 (quotation omitted). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *See Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient. *See Lindke v. Tomlinson*, 31 F.4th 487, 496 (6th Cir. 2022).  The Court generally relies on the allegations in the Complaint, but the Court may also consider documents that "are referred to in" the Complaint and "central to the claims contained therein." *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) (quoting *Gavitt v. Born*, 35 F.3d 623, 640 (6th Cir. 2016)).

The Court may consider the Bid at this stage.  The Complaint refers to the Bid; it even quotes portions of the Bid in attempting to state claims [*See* Doc. 1 ¶¶ 52-57, 97, 168].  Those claims center around representations made to prepare and submit the Bid [*See*, *e.g.*, *id.* ¶¶ 151, 154, 155, 181, 213].  And the breach of contract claim is based on the terms of the Bid [*See id.* ¶¶ 81-83, 87, 213; *see also* Doc. 18 at 12].  Taking Plaintiff at her word, the terms of the alleged contract at issue "were memorialized in the Bid document" [Doc. 18 at 13].  Due to the specific

5

references to the Bid and its terms in the Complaint and the centrality of the Bid to Plaintiff's claims, the Court may properly consider the Bid here. *See Stein*, 873 F.3d at 528.

## A. The Complaint Plausibly Alleges That UCOR Was Plaintiff's Employer.

Defendant UCOR's challenge to Plaintiff's ADEA and THRA claims is limited to its assertion that it was not Plaintiff's "employer" [*See* Docs. 9 at 1, 12 at 6-9]. The Court "applies the same analysis to age-discrimination claims brough under the THRA as those brought under the ADEA." *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) (citations omitted). So, the Court analyzes both claims together here.

The ADEA provides that it is "unlawful for an employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The law defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). An "employee," as relevant here, is "an individual employed by any employer." 29 U.S.C. § 630(f). In the face of these circular and "exceedingly broad and generally unhelpful" statutory definitions, *Solis v. Laurelbrook Sanitarium and Sch. Inc.*, 642 F.3d 518, 522 (6th Cir. 2011),[4] common law and caselaw fill the gaps.

"Under the joint employer doctrine, 'an entity that is not the plaintiff's formal employer may be treated . . . as if it were the employer for purposes of employment laws.'" *Parks v. Lyash*, No. 22-5841, 2023 WL 6237062, at \*5 (6th Cir. Apr. 12, 2023) (quoting *Sanford v. Main Street Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011)). "Entities are joint employers if they 'share or co-determine those matters governing essential terms and conditions of

---

[4] *Solis* specifically analyzed the Fair Labor Standards Act, which contains similar definitions for "employer" and "employee." *Compare* 29 U.S.C. § 630(b), (f), *with* 29 U.S.C. § 203(d), (e)(1).

employment.'" *Id.* (quoting *Nethery v. Quality Care Invs., L.P.*, 814 F. App'x 97, 103 (6th Cir. 2020)). The doctrine can apply even when the entities "are in fact independent." *See Sanford*, 449 F. App'x at 491. The Court focuses on the relevant "entity's ability to hire, fire or discipline" the employee, affect "compensation and benefits" and "direct and supervise" the employee's performance. *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013) (citing *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985)).

Viewing the factual allegations in the Complaint in the light most favorable to Plaintiff and making all reasonable inferences, it includes just enough facts to plausibly allege that Defendant UCOR was Plaintiff's "employer." According to the Complaint, RSI hired, paid, and fired Plaintiff; but RSI fired Plaintiff because she did not "support" the "vision" of UCOR's President Rueter [*See* Doc. 1 ¶¶ 29, 62, 67 175-76, 178]. This allows the Court to infer that Rueter's vision for the work, and support thereof, somehow affected Plaintiff's firing and discipline, along with her ultimate compensation and benefits. *See Edmondson v. Nissan N. Am.*, No. 3:22-CV-513, 2024 WL 4635051, at *10 (M.D. Tenn. Oct. 30, 2024). RSI paid Plaintiff, but she worked full-time on UCOR projects [*See* Doc. 1 ¶¶ 58, 64; Doc. 9-2 at 45-56]. While Plaintiff worked full-time on the Cleanup Contract, UCOR employees supervised her work, and UCOR controlled to whom she reported [Doc. 1 ¶¶ 46, 48, 67, 196]. Rueter also controlled Plaintiff's "duties" and "title," changing them or taking them away [*See id.* ¶¶ 143-44]. And Defendant UCOR made the decision to end Plaintiff's work on the Cleanup Contract [*See id.* ¶ 176].

True, Plaintiff remained an employee of RSI, a subcontractor of UCOR, during the relevant time [*Id.* ¶¶ 23, 29, 62, 67]. But under the law, the Court generally sets aside "how the parties characterize the relationship." *See Huang v. Ohio State Univ.*, 116 F.4th 541, 556 (6th Cir. 2024) (cleaned up). And even "an entity that is not the plaintiff's formal employer may be treated" as

7

one. *See Parks*, 2023 WL 6237062, at \*5.  On balance, then, and at this preliminary stage in the litigation, the Court cannot say that that Complaint fails to allege sufficient facts to infer that Defendant UCOR was Plaintiff's "employer."

> **B. The Alleged Contract Supporting Plaintiff's Breach of Contract Claim Is Unenforceable Under The Statute Of Frauds.**

To make a prima facie case for breach of contract, a plaintiff must allege "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winter,* 354 S.W.3d 287, 291 (Tenn. 2011). Tennessee's Statute of Frauds, however, requires a contract "not to be performed within the space of one (1) year from the making of" the contract to be in a writing signed by the party against whom the contract is to be enforced. *See* Tenn. Code Ann. § 29-2-101(a).

Plaintiff bases her breach of contract claim on UCOR's offer of three (3) years of work on the Cleanup Contract [*See* Doc. 1 ¶ 213].  This implicates the Statute of Frauds.  She raises three (3) arguments in an attempt to avoid the Statute of Frauds.  None is availing.

*First*, she argues the "contract was clearly memorialized in" the Bid "and was, therefore, in writing" [Doc. 18 at 20 (citations omitted)].  To satisfy the Statute of Frauds, a writing "must contain the essential terms of the contract, expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers." *Waddle v. Elrod*, 367 S.W.3d 217, 226 (Tenn. 2012) (quoting *Lambert v. Home Fed. Sav. & Loan Ass'n*, 481 S.W.2d 770, 733 (Tenn. 1971)).  The language of the Bid itself and Plaintiff's certification in the Bid that if Defendant UCOR were awarded the Cleanup Contract, she would "accept the proposed position" and "perform in the proposed position for a minimum of three years," [Doc. 9-2 at 49], simply does not contain sufficient evidence of the essential terms of the contract to satisfy the writing reuqirement, *see Waddle*, 367 S.W.3d at 226.

***Second***, Plaintiff presents the doctrine of part performance [Doc. 18 at 20]. "Part performance" takes a contract outside of the Statute of Frauds if a defendant's conduct "amount[s] to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance" and the "plaintiff, in reliance on this representation, has proceeded . . . so far to alter his position as to incur an unjust and unconscious injury and loss." *Upperline Equip. Co. v. J & M Inc.*, 724 F. Supp. 2d 883, 890 (E.D. Tenn. 2009) (quoting *Buice v. Scruggs Equip. Co.*, 250 S.W.2d 44, 48 (Tenn. 1952)). Classic examples include an employee leaving secure employment to join a riskier venture with less pay; or taking a job that entailed more travel, more responsibilities, and more risk. *See Jarrett v. Epperly,* 896 F.2d 1013, 1018 (6th Cir. 1990).

Here, Plaintiff has not pled facts demonstrating how she relied on Rueter's representations "so far to alter [her] position" in a way that resulted in an "unjust and unconscious injury and loss." *See Upperline*, 724 F. Supp. 2d at 890. Before she accepted Rueter's offer, she was employed by RSI working full-time on a UCOR project [*See* Doc. 1 ¶ 64]. Afterward she was employed by RSI working full-time on a UCOR project [*See id.* ¶ 62]. Put simply, nothing in the Complaint suggests that the terms of Plaintiff's employment were materially different after she accepted a role on the Cleanup Contract. The classic hallmarks are missing. The Complaint does not allege that Plaintiff was paid less, gave up other opportunities, or otherwise "alter[ed]" her "position" in reliance upon Rueter's offer to work on the Cleanup Contract. *See Upperline*, 724 F. Supp. 2d at 890; *see also Jarrett*, 896 F.2d at 1018.

***Third***, Plaintiff argues that that equitable estoppel prohibits the Statue of Frauds from operating here [*Id.* at 21 n.16]. Equitable estoppel applies in "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Jarrett*, 896 F.2d at 1018-19 (quoting *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624

9

(Tenn. 1979)).  The Complaint simply does not allege such circumstances.  Plaintiff remained an employee of RSI after UCOR's offer.  And her employment with RSI could have continued after Defendant UCOR released her from working on the Cleanup Contract.  To the extent Plaintiff suggests that UCOR did a "bait and switch" by using Plaintiff's experience to secure the Cleanup Contract only to replace her with a younger employee, [*see* Doc. 1 ¶ 193], the "victim" is the Department of Energy.  As discussed in more detail below, the Complaint does not allege conduct that "verg[es] on actual fraud" against Plaintiff. *See Jarrett*, 896 F.2d at 1018-19.  So equitable estoppel does not save the claim.  The Statute of Frauds renders Plaintiff's alleged contract unenforceable. *See* Tenn. Code Ann. § 29-2-101(a).  So, her breach of contract claim fails.

### C.  The Complaint Fails To State A Claim For Promissory Estoppel.

To state a claim for promissory estoppel under Tennessee law, Plaintiff must allege "detrimental reliance, and a loss suffered as a result of detrimental reliance." *See Alden v. Presley,* 637 S.W.2d 862, 864 (Tenn. 1982).  The promisor must induce a "substantial change of position by the promisee" and the "detriment suffered [by the promisee] in reliance must be substantial in an economic sense." *Id.* (quoting L. Simpson*, Law of Contracts* § 61 (2d ed. 1965)).

Here, the Complaint does not allege facts supporting a sufficient loss suffered because of Plaintiff's reliance on the alleged promise.  This claim too is based on Rueter's alleged promise of three (3) years' work on the Cleanup Contract.  But, as discussed above, the Complaint does not allege that her position substantially changed—she remained an employee of RSI working full-time on a UCOR project.  The Complaint includes the conclusory statement that Plaintiff "relied to her detriment on Rueter's representations," [*see* Doc. 1 ¶ 73], but that conclusory statement alone is insufficient.  And Plaintiff's mere agreement to work on the Cleanup Contract (if won) and efforts undertaken to provide documents for the Bid do not show that she substantially changed her position in reliance on the promise or that any loss she suffered in reliance was

10

"substantial in an economic sense." *See Alden*, 637 S.W.2d at 864. So, her promissory estoppel claim fails.

**D. The Complaint Fails To State A Claim For Intentional Misrepresentation.**

Next, Defendant moves to dismiss Plaintiff's claims of "fraudulent misrepresentation" and "promissory fraud" [Doc. 12 at 10-15]. Under Tennessee law, the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" all refer to the same cause of action. *See Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012). The Tennessee Supreme Court has "suggest[ed]" that the term "intentional misrepresentation" should be used "exclusively" for this cause of action, and the Court adopts that practice here. *See id.* at 343.

To state a claim for intentional misrepresentation, Plaintiff must allege: (1) a representation of a present or past fact; (2) that was false when made; (3) that involved a material fact; (4) that the defendant believed was false or made with reckless disregard of its truth; (5) that the plaintiff did not know was false and was justified in relying on its truth; and (6) that the plaintiff sustained damages as a result. *See id.* "[I]f the claim is based on promissory fraud, then the misrepresentation must 'embody a promise of future action without the present intention to carry out the promise.'" *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). Here in Federal Court, under Rule 9(b), a party "alleging fraud" must "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). "Conclusory statements of reliance are not sufficient to explain with particularity how [a plaintiff] detrimentally relied on the alleged fraud." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852-53 (6th Cir. 2006).

Plaintiff's intentional misrepresentation claim suffers a familiar defect. The Complaint does not plausibly and sufficiently allege that Plaintiff relied on Rueter's promise in a way that damaged her. *See Evans*, 434 F.3d at 852-53. Without facts particularly showing that she relied

11

on Defendant's promise in a meaningful way; for example by accepting less pay, taking on a riskier position, or agreeing to a more demanding role; the Complaint does not state a claim for intentional misrepresentation.

### E. The Complaint Fails To State A Claim For Tortious Interference.

To state a claim against Defendant UCOR for tortious interference with Plaintiff's employment with RSI, the Complaint must allege: (1) a legal contract between Plaintiff and RSI, (2) UCOR was aware of the contract, (3) UCOR intended to induce a breach of the contract, (3) UCOR acted with malice, (4) RSI breached the contract, (5) UCOR proximately caused the breach, and (6) Plaintiff was injured by the breach. *See Acad. Of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, 155 F.4th 795, 820 (6th Cir. 2025) (citing *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 405 (Tenn. 2002)). "A complaint for tortious interference must do more than simply parrot the legal elements of the cause of action." *ChampionX LLC v. Resonance Systems, Inc.*, 726 F. Supp. 3d 786, 812 (E.D. Tenn. 2024) (quoting *Lee v. State Volunteer Mut. Ins. Co.*, No. E200203127COARCV, 2005 WL 123492, at * 10 (Tenn. Ct. App. Jan. 21, 2005)).

The Complaint states that Plaintiff's "termination from RSI was due to Defendant, UCOR's tortious interference in her employment" [Doc. 1 ¶ 212]. To support interference, the Complaint relies on allegations that Defendant RSI (1) asked Plaintiff to sign a release upon her departure that was allegedly broad enough to cover UCOR, (2) has substantial contracts with UCOR, and (3) terminated her for "not supporting [UCOR President] Ken Rueter's vision" [*See id.* ¶¶ 178, 182, 195]. But these factual allegations do not give rise to a reasonable inference that Defendant UCOR took acts that intentionally and maliciously interfered with Plaintiff's employment with RSI. *See Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 760 (M.D. Tenn. 2019) ("[T]o make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice

12

might reasonably be inferred" (quotation omitted)). Speculation does not suffice. The Complaint does also state "[o]n information and belief, Defendant UCOR requested Defendant, RSI to terminate Plaintiff from RSI, since Defendant, UCOR had released her from working full-time on the Cleanup Contract" [Doc. 1 ¶ 181]. But "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *See In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (citation omitted). Without more, allegations "on information and belief" will not do. *See id.* Ultimately, the Complaint fails to state a claim for tortious interference.

## III.  Conclusion

For the above reasons, the Court **DENIES** Defendant UCOR's "Motion to Dismiss" [Doc. 9] as to Plaintiff's ADEA and THRA claims, and **GRANTS** Defendant UCOR's Motion as to Plaintiff's breach of contract, promissory estoppel, fraudulent misrepresentation, promissory fraud, fraud by omission, and tortious interference claims.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge

13